# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **DIANNA L. GRAHAM, ET AL.,** | ) | |
| | ) | Case No. 1:13CV00011 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CONSOLIDATION COAL COMPANY, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Marvin W. Masters and April D. Ferrebee, The Masters Law Firm LC, Charleston, West Virginia, and Terrence Shea Cook, T. Shea Cook, P.C., Richlands, Virginia, for Plaintiffs; Jonathan T. Blank and Larissa LPC Sneathern, McGuire Woods LLP, Charlottesville, Virginia, and David Grant Altizer and Mandy Varney French, Altizer, Walk and White PLLC, Tazewell, Virginia, for Defendants.*

In this diversity case, the plaintiffs assert that a mining company, needing to dispose of excess wastewater from an underground coal mine, and prohibited from discharging the water into local streams, unlawfully diverted the water into the underground mine voids located beneath the plaintiffs' land. Because I conclude that the plaintiffs' claims are barred by the applicable statutes of limitations, I will grant the defendants' Motion for Summary Judgment based on the statute of limitations.

In addition, the plaintiffs have not produced evidence showing that they have suffered any irreparable harm or that a legal remedy, were it not barred by the

statute of limitations, would be inadequate, nor have they demonstrated that the balancing of hardships or public interest favor an injunction. Therefore, I will grant the defendants' Motion for Partial Summary Judgment as to the plaintiffs' request for injunctive relief.

Because these issues are dispositive, it is unnecessary for me to resolve other pending motions.

## I.

The plaintiffs, Dianna L. Graham, Anna Pearl Ratliff, Ira Gordon Ratliff, and Connie Ratliff, own surface tracts of land above the former Beatrice Mine, along with the associated coal bed methane. In 1887, a severance deed executed by the plaintiffs' predecessors in title conveyed away the coal and granted broad mining rights. The current owner of the coal mineral estate is Harrison-Wyatt, L.L.C., which is not a party to this case. In 1956, defendant Island Creek Coal Company ("Island Creek") leased the coal. Island Creek operated the Beatrice Mine from 1963 until 1986. The Beatrice Mine was sealed in 1987 and is not in operation today.

The Beatrice Mine is adjacent to the Buchanan No. 1 Mine, which has been operated by defendant Consolidation Coal Company ("Consolidation"), and later by CONSOL Buchanan Mining Company LLC, for several decades. In April

-2-

1994,[1] pursuant to an agreement with Island Creek, Consolidation began pumping water through overland pipes from the Buchanan No. 1 Mine into the Beatrice Mine voids[2] under the plaintiffs' surface property. In 1996 and 1997, Consolidation drilled boreholes from the Buchanan No. 1 Mine into the Beatrice Mine, allowing water to flow directly between the two mines. The plaintiffs never consented to the placement of water in the mine voids under their land.

The plaintiffs initially filed separate suits against the defendants in state court on May 31, 2011. The defendants removed the cases based on diversity of citizenship, and the court consolidated the actions. The plaintiffs notified the court of their intent to voluntarily dismiss the consolidated case on August 2, 2012, and the court granted the motion to dismiss on August 4, 2012. *See* Min. Order, *Ratliff v. Consolidation Coal Co.*, No. 1:12CV00021 (W.D. Va. dismissed Aug. 4, 2012) (ECF No. 22). Less than six months later, on January 30, 2013, the plaintiffs filed the instant case in this court.[3] The court granted in part a motion to dismiss by the defendants, *Graham v. Consolidation Coal Co.*, 1:13CV00011, 2014 WL 1050420 (W.D. Va. Mar. 18, 2014), and granted the plaintiffs' motion for leave to amend.

---

[1] The exact date is disputed, and the plaintiffs allege an earlier start date of October 1993.

[2] "Mine voids" are defined by the plaintiffs as "open spaces . . . created by mining activity." (Second Am. Compl. ¶ 26, ECF No. 62.)

[3] Pursuant to Va. Code Ann. § 8.01-229(E)(3), because the plaintiffs recommenced their action within six months of voluntarily dismissing their initial case, the filing of the initial complaints acted to toll the statute of limitations.

-3-

The Second Amended Complaint asserts the following claims against Consolidation:  trespass, trespass-assumpsit (unjust enrichment), negligence and/or gross negligence, nuisance, waste, and conversion, and a count requesting injunctive relief.  The Second Amended Complaint also asserts a claim of waste against Island Creek.  The Second Amended Complaint does not assert any causes of action against defendant CONSOL Energy, Inc. ("CONSOL"), the parent company of Island Creek and former parent company of Consolidation, but it does seek punitive damages from all defendants.  Following the defendants' motion to dismiss the Second Amended Complaint, I dismissed the waste claim against Consolidation and the claim for punitive damages against CONSOL.  *Graham v. Consolidation Coal Co.*, No. 1:13CV00011, 2014 WL 6983339 (W.D. Va. Dec. 10, 2014).

Discovery has now closed, and the defendants have filed several motions for summary judgment on different grounds and have moved to exclude the plaintiffs' expert witnesses.  The plaintiffs have filed a motion to compel the production of certain documents, which the defendants contend are privileged.  These motions have been fully briefed and orally argued, and they are now ripe for decision.

The plaintiffs' claim of trespass-assumpsit has a three-year statute of limitations.[4] Va. Code Ann. § 8.01-246(4). A five-year statute of limitations governs the claims of trespass, negligence, nuisance, waste, and conversion. Va. Code Ann. § 8.01-243(B). The parties agree that there is no discovery rule under Virginia law for any of these claims. *See* Va. Code Ann. § 8.01-230. Thus, under Virginia law, the plaintiffs' trespass-assumpsit claim is untimely if the alleged wrongful acts occurred before May 31, 2008, and their other claims are untimely if the alleged injuries were sustained before May 31, 2006. The defendants argue that all of the plaintiffs' claims are time barred.

The plaintiffs contend that the discovery rule found in the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") applies to the plaintiffs' claims because this case involves the release of hazardous substances into the environment. *See* 42 U.S.C. § 9658. The plaintiffs assert that they neither knew nor should have known about the defendants' activities until December 2010, and they timely filed suit following that date. The defendants argue that CERCLA's discovery rule can only apply to state law causes of action where the plaintiff asserted a CERCLA claim, or at least could have asserted a viable claim under CERCLA. The defendants contend that

---

[4] The parties agree that Virginia law governs the plaintiffs' claims in this diversity case, with the exception of the dispute over whether federal law preempts state law concerning the commencement date for the statutes of limitations.

-5-

the plaintiffs never had any viable CERCLA claim. Moreover, according to the defendants, even if the discovery rule did apply here, the plaintiffs should have known about the pumping of water into the Beatrice Mine voids long before they filed suit due to public filings and heavy publicity discussing the practice.

The defendants also argue that the plaintiffs are not entitled to any injunctive relief, for three reasons. First, the defendants contend that a Virginia statute applies to this case and bars injunctive relief. *See* Va. Code Ann. § 55-154.2(B). Second, the defendants contend that the plaintiffs cannot prove that they have suffered irreparable harm or that there is no adequate remedy at law. Third, the defendants assert that the balancing of equities and the public interest weigh against imposing an injunction requiring the defendants to remove the water from the Beatrice Mine voids. The plaintiffs, on the other hand, assert that § 55-154.2(B) does not apply here because it is not retroactive. *See Bailey v. Spangler*, 771 S.E.2d 684 (Va. 2015) (holding that Va. Code Ann. § 55-154.2(A) does not apply retroactively). The plaintiffs contend that all of the prerequisites for injunctive relief are present in this case.

## II.

The following facts are taken from the summary judgment record and, unless otherwise stated, are undisputed. Consolidation disclosed its plan to pump water from the Buchanan No. 1 Mine into the Beatrice Mine voids to federal and

state regulators beginning in September 1993. The permit application, which was available to the public, mentioned the Beatrice Mine by name. A public notice was published in the local newspaper *Richlands News Press* for four weeks in November 1993, although the notice did not mention the Beatrice Mine by name, instead describing the location by reference to nearby towns and highways and the Keen Mountain USGS 7.5 Min. Quadrangle. The public notice was approved by the Virginia Department of Mines, Minerals, and Energy's ("DMME") Division of Mined Land Reclamation ("DMLR"). The public notice was on file in the Buchanan County Circuit Court from November 1, 1993, through January 20, 1994. Consolidation's permit revision application, which expressly referenced pumping mine water into the Beatrice Mine, was approved on March 4, 1994. Pursuant to the revised permit, Consolidation began discharging water into the Beatrice Mine in June 1994, although the plaintiffs contend the discharges began as early as October 1993. Consolidation did not contact the plaintiffs before it began pumping water into the mine. Consolidation stopped pumping water into the Beatrice Mine in August or September 2003.

From November 2005 through October 2006, the pumping of mine water into the Beatrice Mine voids was a topic of multiple newspaper articles and municipal resolutions. Articles published in the newspaper *Virginia Mountaineer* on November 17, 2005, December 8, 2005, December 15, 2005, January 19, 2006,

Case 1:13-cv-00011-JPJ-PMS   Document 229   Filed 10/26/15   Page 7 of 23   Pageid#: 7381

June 1, 2006, and October 5, 2006, and an article published in the newspaper *The Voice* on May 25, 2006, mentioned the Beatrice Mine by name. In June 2006, a comment submitted to DMLR and DMME specifically referenced Consolidation's practice of pumping mine water from the Buchanan No. 1 Mine into the Beatrice Mine; the comment was part of the public permitting file. Other documents in the file also referenced the pumping of water into the Beatrice Mine. A public resolution passed by the Town of Grundy on November 8, 2005, was sent to the Governor, United States Senators, a United States Congressman, a state senator, a state delegate, state environmental agency personnel, and various persons at the United States Army Corps of Engineers. The Town of Grundy and Buchanan County Board of Supervisors submitted comments to permitting agencies. The municipal resolutions were part of the public permit revision application file.

The defendants contend that the statute of limitations began running when the first drop of water was placed into the Beatrice Mine in April 1994. Therefore, according to the defendants, after April 1999, all of the plaintiffs' claims had become untimely. Even if the statute of limitations had begun to run on the last date that water was pumped into the Beatrice Mine, in September 2003, all of the plaintiffs' claims would have become untimely in September 2008, several years before the plaintiffs' initial complaints were filed.

-8-

The plaintiffs claim that each discharge of water into the Beatrice Mine is a separate actionable event giving rise to its own statute of limitations. The plaintiffs further claim that because the mine water is both a hazardous substance and a pollutant or contaminant under CERCLA, the CERCLA discovery rule applies, regardless of whether the plaintiffs actually could have asserted a CERCLA claim. According to the plaintiffs, they did not know and should not have known about the pumping of water into the mine voids until shortly before they filed their initial suits. The plaintiffs claim that the *Richlands News Press* is not a newspaper of general circulation in their community, and the notice was therefore legally insufficient. They further contend that the notice was insufficient because it did not specifically mention the Beatrice Mine or give enough information to apprise a reasonable reader of the fact that water was being pumped into the Beatrice Mine. They claim they did not see the public notice, nor did they subscribe to or see the articles in the *Virginia Mountaineer* or *The Voice*. The plaintiffs have submitted affidavits explaining why each of them could not have been expected to know about these issues earlier; the stated reasons include frequent travel and working outside the area.

The plaintiffs also claim that water is still being transferred between the two mines today via the horizontal drainage boreholes. It is undisputed that mine water is currently being stored in the mine voids beneath the plaintiffs' surface tracts.

Case 1:13-cv-00011-JPJ-PMS   Document 229   Filed 10/26/15   Page 9 of 23   Pageid#: 7383

The defendants assert that the water currently being stored under the plaintiffs' surface tracts is the same water that has been there since pumping ceased in 2003, and any natural transfer of water from one mine to the other does not create a new cause of action for statute of limitations purposes.

The plaintiffs' damages expert, William G. Foster, Ph.D., has quantified the plaintiffs' damages under three different theories: 1) the value of the benefit to the defendants based on profits from the Buchanan No. 1 Mine; 2) the total costs avoided by the defendants because of their use of the Beatrice Mine voids for storage of water from the Buchanan No. 1 Mine; and 3) the amounts the defendants would have paid the plaintiffs in exchange for the right to store water in the Beatrice Mine voids had the parties negotiated a contract prior to when Consolidation began pumping water into the voids. The defendants dispute these theories of recovery as well as the amounts calculated by Foster.

The Second Amended Complaint seeks injunctive relief as an alternative to money damages. The plaintiffs move that the request for an injunction "be bifurcated and heard separately, if at all, following the conclusion of the trial of this case on the monetary relief sought in this case. Such Count would only be prosecuted further if needed due to the inadequate remedy at law . . . ." (Second Am. Compl. ¶ 73, ECF No. 62.) Essentially, the plaintiffs indicate that they only intend to pursue injunctive relief if the court finds they are not entitled to monetary

damages or if they find any award of monetary damages insufficient. The injunctive relief sought consists of an order requiring the defendants to remove the water and contaminants from the mine voids in a way that leaves the coal bed methane undisturbed, and to ensure that no additional water from the Buchanan No. 1 Mine enters the Beatrice Mine voids.

The Beatrice Mine voids lie approximately one to two thousand feet below the surface of the plaintiffs' properties. The plaintiffs admit that they have never sought to use the mine voids and do not currently have any plans to use them. The defendants contend that even if the water currently in the mine voids were removed, the mine would likely naturally fill with water again. It is undisputed that nine to thirteen percent of the water currently in the Beatrice Mine is naturally occurring water that was not pumped there by the defendants.

The plaintiffs claim that the placement of water into the Beatrice Mine voids has negatively impacted the plaintiffs' coal bed methane gas estate. According to the plaintiffs, their expert witness, Timothy L. Hower, "may also be expected to testify that once the void space of a mine is filled with water, it may not be possible to re-establish gas production by draining the water from the mine." (Pls.' Expert Disclosures Ex. 2, ECF No. 108-2.) Hower testified in his deposition that his "expert opinion is that you cannot drill an economically viable well now in the plaintiffs' land to recover the gas. The ship has sailed. It is too late." (Pls.' Opp'n

to Defs.' Mot. for Summ. J. Based on Statute of Limitations Ex. 21 at 148, ECF No. 157-21.)

III.

Summary judgment is appropriate when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See id.* at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

A. Statute of Limitations.

A Virginia statute entitled "Accrual of right of action" provides as follows:

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute.

-12-

Va. Code Ann. § 8.01-230; *see also Chalifoux v. Radiology Assocs. of Richmond, Inc.*, 708 S.E.2d 834, 837 (Va. 2011); *Hawks v. DeHart*, 146 S.E.2d 187, 189 (Va. 1966). The clock thus begins running whenever "any injury, however slight, is caused by the negligent act," regardless of whether additional injury occurs later as a result of the same act. *St. George v. Pariser*, 484 S.E.2d 888, 890 (Va. 1997). The Fourth Circuit has stated,

> [U]nder Virginia law, the statute of limitations does not accrue separately for each set of damages which results from a wrongful act. Once a cause of action is complete and the statute of limitations begins to run, it runs against all damages resulting from the wrongful act, even damages which may not arise until a future date.

*Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1300 (4th Cir. 1983).

While there is no discovery rule under Virginia law, in appropriate cases, CERCLA provides a discovery rule. In "[a]ctions under State law for damages from exposure to hazardous substances," CERCLA provides an "[e]xception to State statutes," as follows:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

-13-

42 U.S.C. § 9658(a)(1). "[T]he term 'federally required commencement date' means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A).

The plain terms of the statute indicate that the "federally required commencement date" applies only to actions for damages "which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility." 42 U.S.C. § 9658(a)(1). The Supreme Court has stated that CERCLA's discovery rule "applies to statutes of limitations governing actions for personal injury or property damage arising from the release of a hazardous substance, pollutant, or contaminant into the environment." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2180 (2014) (also noting that where the discovery rule applies, the statute of limitations "begin[s] to run when a plaintiff discovers, or reasonably should have discovered, that the harm in question was caused by the contaminant"). Here, although the plaintiffs allege that the water pumped into the Beatrice Mine contained hazardous substances, pollutants, and contaminants, the plaintiffs do not present any evidence that their damages were caused by the hazardous substances. Rather, viewing the evidence in the light most favorable to the plaintiffs, any

-14-

damages were caused by the presence of water, not by contaminants in the water. The same damages would have been caused by pure, clean water, or by water that naturally filled the mine. Thus, I conclude that the plaintiffs are not making claims for damages '"caused or contributed to by exposure to [a] hazardous substance, or pollutant or contaminant."' *Id.* at 2184 (quoting 42 U.S.C. §§ 9658(a)(1)-(2)). Based on the language of the statute, CERCLA's discovery rule does not apply to the plaintiffs' claims.

Contrary to the plaintiffs' assertion, such a finding is not at odds with this court's decision in *C.L. Ritter Lumber Co. v. Consolidation Coal Co.*, No. 1:11CV00019, 2011 WL 3793320 (W.D. Va. Aug. 25, 2011). In her report and recommendation in the *Ritter* case, the magistrate judge simply held that the CERCLA discovery rule is "applicable in 'any action brought under State law for . . . property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility' regardless of whether an underlying CERCLA action is brought." *Id.* at *9 (quoting 42 U.S.C. § 9658(a)(1)). Here, the defendants' argument is not simply that the plaintiffs did not file an underlying CERCLA action, but that they could not have brought such an action because their claimed damages were not caused or contributed to by exposure to a hazardous substance. The difference in procedural posture between these two cases is also significant. In *Ritter*, the court

Case 1:13-cv-00011-JPJ-PMS   Document 229   Filed 10/26/15   Page 15 of 23   Pageid#: 7389

was merely determining the sufficiency of the complaint's allegations. In this case, Hower, an expert for the plaintiffs, opined that the alleged damage to the plaintiffs' gas estate was caused by water. The plaintiffs allege that their property was damaged by exposure to hazardous substances, but they point to no evidence supporting that claim, and they have incurred no environmental remediation costs. Thus, in this case, the CERCLA discovery rule is inapplicable based on the undisputed facts of record.

Fourth Circuit precedent also supports the inapplicability of the CERCLA discovery rule in this case. In *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862 (4th Cir. 1989), the Fourth Circuit held that the CERCLA discovery rule did not apply to state law causes of action related to asbestos removal because asbestos removal is outside the scope of CERCLA. The court "h[e]ld that because CERCLA does not authorize response cost recovery actions for removal of asbestos from the structure of a building, § 9658 of CERCLA does not preempt the repose period" under Maryland state law. *Id.* at 869. Hence, the Fourth Circuit would likely require a plaintiff to have a cognizable CERCLA claim in order to take advantage of the CERCLA discovery rule.

This appears to be the majority rule. Most courts have found the federally required commencement date to apply only where the plaintiff had a viable

(asserted or unasserted) CERCLA claim. *See, e.g.*, *Barnes ex rel. Barnes v. Koppers, Inc.*, 534 F.3d 357, 364 (5th Cir. 2008) (noting that legislative history implies that CERCLA discovery rule was intended to operate within the bounds of CERCLA and to cover actions already governed by existing provisions of CERCLA); *Covalt v. Carey Canada, Inc.*, 860 F.2d 1434, 1439 (7th Cir. 1988) (finding discovery rule inapplicable to claim based on workplace exposure, as the interior of a workplace is not the environment for CERCLA purposes); *Knox ex rel. Knox v. AC & S, Inc.*, 690 F. Supp. 752, 757 (S.D. Ind. 1988) (finding CERCLA discovery rule applicable only "where there is an underlying CERCLA action providing for cleanup and remedial activities"); *Greco v. United Techs. Corp.*, 890 A.2d 1269, 363-64 (Conn. 2006) (declining to apply federally required commencement date to claim based on workplace exposure because a release in the workplace is not a release into the environment under CERCLA); *Becton v. Rhone-Poulenc, Inc.*, 706 So.2d 1134, 1137-41 (Ala. 1997) (declining to apply CERCLA discovery rule to case involving workplace exposure to chemicals, as such a claim would not be cognizable under CERCLA, and noting that most courts have limited the discovery rule's application to situations where an underlying CERCLA claim has been made or could exist).

Here, the plaintiffs have not asserted a CERCLA cause of action, nor could they, because there is no evidence that they suffered any damages caused by

hazardous substances. Therefore, they cannot invoke the CERCLA discovery rule. Under applicable Virginia law, the plaintiffs' claims are time barred.

Even if the CERCLA discovery rule did apply to the plaintiffs' claims, the undisputed facts show that despite the plaintiffs' asserted lack of actual knowledge, they should have known about their causes of action at least by the end of 2005, based on the municipal ordinances and heavy local publicity regarding Consolidation's pumping of water into the Beatrice Mine voids, in combination with the earlier public filings and notices. The plaintiffs' first lawsuits were filed on May 31, 2011. Even if the court assumes that their causes of action did not accrue until after the initial flurry of publicity and local political activity surrounding the defendants' water storage practices, the three-year and five-year statutes of limitations for the plaintiffs' claims had run by the time the plaintiffs filed their initial complaints. The court need not determine the earliest date on which the plaintiffs should have known of their claims. It is sufficient to say that under the circumstances, had the plaintiffs exercised any sort of diligence regarding their alleged property rights, they would have known of their claims before May 31, 2006.

Indeed, the plaintiffs appear to concede in their brief that "Defendants' intentions to dump wastewater into Beatrice were knowable," if not actually known. (Pls.' Opp'n to Defs.' Mot. for Summ. J. Based on Statute of Limitations

16, ECF No. 157.) While the issue of when a plaintiff should have known of his claim is often a jury question, there are cases in which the record "will provide a clear basis for the court to determine when plaintiff knew or should have known of the existence of her cause of action." *Brown*, 704 F.2d at 1304. This is such a case. The undisputed facts demonstrate that had the plaintiffs been vigilant, they would have known of their causes of action more than five years before they filed their initial complaints. The CERCLA discovery rule, if it applied here, would not save the plaintiffs' claims.

The plaintiffs also argue that the statutes of limitations should be equitably tolled, but the record does not show any basis for equitable tolling. Consolidation made numerous public filings and followed the proper channel of seeking a permit to pump water into the Beatrice Mine. The record reveals no fraudulent concealment or affirmative act by the defendants designed to deprive the plaintiffs of the power to assert their claims in a timely manner. *See Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll Farm, L.L.C.*, 773 S.E.2d 162, 164 (Va. 2015).

Finally, the plaintiffs argue that each discharge of water created a separate cause of action with its own statute of limitations. But it is undisputed that the pumping of water into the Beatrice Mine ceased in August or September 2003, and the horizontal drainage boreholes were drilled in 1996 and 1997. The plaintiffs do

not allege that the defendants took any more recent action to cause water to be placed into the Beatrice Mine. The alleged ongoing transmission of water back and forth between the Beatrice and Buchanan No. 1 Mines through the boreholes does not amount to a series of separate acts creating separate claims. This case is readily distinguishable from *Hampton Roads Sanitation District v. McDonnell*, 360 S.E.2d 841 (Va. 1987), in which separate discharges of sewage occurred in 1969 and 1980-81, more than a decade apart. There, the later set of discharges caused damage that had not been sustained as a result of the earlier discharge. *Id.* at 844. Here, the alleged ongoing transfer of water between the two mines is continuous and not the result of any new act by the defendants, and there is no evidence that it is causing any new damage.

For all of these reasons, I find that the plaintiffs' legal claims are time barred, and I will grant the defendants' Motion for Summary Judgment based on statute of limitations.

## B. Injunction.

A plaintiff seeking a permanent injunction bears the burden of demonstrating:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

-20-

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975) (noting that injunctive relief is "a remedy whose basis in the federal courts has always been irreparable harm and inadequacy of legal remedies" (internal quotation marks and citation omitted)). "Generally, 'irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate.'" *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275, Laborers Int'l Union of N. Am.*, 479 F.2d 1033, 1037 (2d Cir. 1973)), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." *eBay*, 547 U.S. at 391. "A court should not impose an injunction lightly, as it is 'an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.'" *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (quoting *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013)).

In this case, I find that the plaintiffs have not satisfied the requirements for obtaining an injunction. The plaintiffs' damages expert has quantified the plaintiffs' alleged damages under three separate theories, belying any contention that monetary damages are difficult to ascertain. By requesting an injunction

solely as an alternative to their legal claims, to be invoked only if they believe their ultimate monetary recovery is inadequate, the plaintiffs essentially admit that they are able to be adequately compensated through monetary damages. The fact that the statutes of limitation have run on their legal claims, thus making any remedy at law unavailable to the plaintiffs at this late date, does not render the legal remedy inadequate. To find otherwise would permit a plaintiff to obtain an injunction any time a statute of limitations had run, which would undermine the purpose and effectiveness of statutes of limitation.

The plaintiffs admit that they have never attempted to use the mine voids at issue and have no plans to use them in the future. An expert witness for the plaintiffs has opined that removing the water from the Beatrice Mine voids would not benefit the plaintiffs because, in his opinion, the coal bed methane estate has already been damaged, and that damage cannot be undone. Moreover, the plaintiffs' expert admits that approximately one tenth of the water in the Beatrice Mine is naturally occurring water that was not placed there by the defendants. If the water were removed from the Beatrice Mine voids, the voids would eventually fill with water again, without any action by the defendants.

The balance of hardships in this case does not favor the plaintiffs. Requiring the defendants to remove the water from the Beatrice Mine voids would be extremely costly to the defendants and would result in no benefit to the plaintiffs.

-22-

Additionally, the plaintiffs have made no argument that such an injunction would be in the public interest. Because the plaintiffs have failed to establish any of the four requirements for obtaining injunctive relief, I will grant the defendants' Motion for Partial Summary Judgment as to Count VIII of the Second Amended Complaint.

Because my holdings above are dispositive, I find it unnecessary to address the other issues raised by the parties and will deny the remaining motions as moot.

III.

For the foregoing reasons, it is **ORDERED** that the Motion for Summary Judgment (ECF No. 113) and Motion for Partial Summary Judgment (ECF No. 146) are GRANTED, and all remaining motions are DENIED as moot. A separate Final Judgment will be entered forthwith.

ENTER: October 26, 2015

/s/ James P. Jones
United States District Judge

-23-